# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| TONIA D. VIKARA,  )<br>   Plaintiff  )<br>  )<br>v.  )<br>  )<br>ANDREW SAUL,[1]  )<br>**Commissioner of Social Security,**  )<br>   Defendant  ) | Civil Action No. 2:18cv00009<br><br>**MEMORANDUM OPINION**<br><br>By:  PAMELA MEADE SARGENT<br>United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Tonia D. Vikara, ("Vikara"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was no longer eligible for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2011 & Supp. 2019). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge upon transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1). Neither party has requested oral argument; therefore, this case is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may

---

[1] Andrew Saul became the Commissioner of Social Security on June 17, 2019; therefore, he is substituted for Nancy A. Berryhill as the defendant in this case.

be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "'substantial evidence.'"'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

By decision dated April 2, 2009, Vikara was found to be disabled as of December 12, 2008, the comparison point decision, ("CPD"). (Record, ("R."), at 16.) However, on April 9, 2015, the Social Security Administration terminated Vikara's benefits, finding that her condition had improved, and she no longer met a listed impairment. (R. at 16, 144-46.) Vikara requested reconsideration of this decision, but the cessation determination was upheld. (R. at 148, 173-79.) Vikara requested a hearing before an administrative law judge, ("ALJ"). (R. at 184.) A video hearing was held on February 22, 2017, at which Vikara was represented by counsel. (R. at 47-70.)

By decision dated May 24, 2017, the ALJ found that, as of April 9, 2015, Vikara no longer was disabled. (R. at 16-28.) The ALJ found that Vikara had not engaged in substantial gainful activity through May 24, 2017, the decision date. (R. at 18.) The ALJ found that the medical evidence established that, at the time of the CPD, on April 2, 2009, Vikara had anorexia nervosa; anemia; chronic fatigue syndrome; depressive disorder; and generalized anxiety disorder. (R. at 18.) The ALJ found that, at the time of the CPD, Vikara's impairments met the criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 5.08, the listing for weight loss due to any digestive disorder. (R. at 18.) The ALJ found that medical improvement occurred as of April 9, 2015, and, as of that date, Vikara had severe impairments, namely status-post ankle fracture; status-post gastrectomy due to gastric ulcer; nutritional deficiency; chronic obstructive pulmonary disease, ("COPD"); anxiety; depression; and history of anorexia nervosa. (R. at 18-19.) However, the ALJ also

found that Vikara did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18.) The ALJ further found that, as of April 9, 2015, Vikara had the residual functional capacity to perform sedentary[2] work, except that she could lift and carry items weighing up to 10 pounds; that she could stand and/or walk for two hours and sit with no limitation; that she could perform work that required no more than occasional climbing and balancing; that required no more than frequent stooping, kneeling, crouching and crawling; that did not require her to handle heavy objects or require pushing and pulling more than 10 pounds; and that did not require exposure to moving machinery, temperature extremes, dusts, chemicals, fumes and humidity. (R. at 21.) The ALJ found that Vikara had no past relevant work. (R. at 27.) Based on Vikara's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that Vikara could perform jobs existing in significant numbers in the national economy, including those of an assembler and an inspector/grader. (R. at 27-28.) Therefore, the ALJ found that Vikara was not under a disability as defined by the Act and was not eligible for benefits as of April 9, 2015. (R. at 28.) *See* 20 C.F.R. § 404.1594(f)(8) (2018).

After the ALJ issued his decision, Vikara pursued her administrative appeals, (R. at 318, 384-86), but the Appeals Council denied her request for review. (R. at 1-6.) Vikara then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2018). The case is before this court on Vikara's motion for

---

[2] Sedentary work involves lifting items weighing up to 10 pounds with occasional lifting or carrying of articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. § 404.1567(a) (2018).

summary judgment filed October 2, 2018, and the Commissioner's motion for summary judgment filed October 10, 2018.

## II. Facts

Vikara was born in 1973, (R. at 320), which classifies her as a "younger person" under 20 C.F.R. § 404.1563(c). She has a high school education and past work experience at a restaurant and a call center. (R. at 57.) Vikara was in a motor vehicle accident in September 2016, at which time her weight dropped and she was "vomiting a lot again." (R. at 54-55.) She stated that she stopped taking her prescription acid suppression medications and was taking over-the-counter medications instead. (R. at 55-56.) Vikara underwent stomach surgery in December 2016. (R. at 56.) At the time of surgery, she weighed 69 pounds, but soon following surgery, her weight returned to 89 to 90 pounds.[3] (R. at 63.) Vikara stated that she could stand and move for an hour before needing to sit down. (R. at 58.) She testified that she could not perform a sit-down job because she was mentally and physically exhausted. (R. at 58.) Vikara reported that, on a daily basis, she went to the grocery store to get what she needed for dinner for that day, and then she cleaned the house, loaded the dishwasher and did the laundry. (R. at 449-50.) She stated that her husband cared for the garden and yard, but she did the housework, cooking and grocery shopping. (R. at 450.)

Ronald Jackson, a vocational expert, also was present and testified at Vikara's hearing. (R. at 67-69.) Jackson testified that a hypothetical individual of Vikara's age, education and work history, who had the residual functional capacity

---

[3] Vikara is four feet and 10 inches tall. (R. at 443.) For her height, a normal weight range would be between 89 to 119 pounds. Weighing 89 pounds, her body mass index, ("BMI"), is 18.5, which is within the normal category for adults of Vikara's height. *See* www.webmd.com/diet/body-bmi-calculator.html (last visited Sept. 10, 2019).

to lift and carry items weighing up to 10 pounds; who could stand and walk no more than two hours in an eight-hour workday; who had no limitations on her ability to sit; who could occasionally climb and balance; who could frequently stoop, kneel, crouch and crawl; who could not handle heavy objects weighing more than 10 pounds; who could not push or pull items weighing more than 10 pounds; and who would need to avoid exposure to moving machinery, temperature extremes, dust, chemicals, fumes and humidity. (R. at 67-68.) Jackson stated that there were sedentary jobs that existed in significant numbers that such an individual could perform, such as an assembler and an inspector/grader. (R. at 68.) Jackson stated that there would be no jobs available should the individual be absent from work two days or more a month or if the individual required extra breaks throughout the day. (R. at 68-69.)

In rendering his decision, the ALJ reviewed medical records from Norton Community Hospital; Dr. R. S. Kadian, M.D., a state agency physician; David Deaver, Ph.D., a state agency psychologist; Howard S. Leizer, Ph.D., a state agency psychologist; Dr. Luc Vinh, M.D., a state agency physician; Dr. Lance C. Dozier, M.D.; Mountain View Regional Medical Center, ("Mountain View"); Dr. Sung-Joon Cho, M.D.; Elizabeth A. Jones, M.A., a licensed senior psychological examiner; Wellmont Medical Associates; Norton Community Hospital; Caring Touch Home Health, Inc.; and Dr. Daniel E. Krenk, D.O.

On November 15, 2013, Vikara underwent an esophagogastroduodenoscopy, ("EGD"), for recurrent symptoms of abdominal pain, nausea and vomiting. (R. at 394.) The EGD showed gastritis. (R. at 394.) Dr. Lance C. Dozier, M.D., reported that Vikara had stopped regularly taking her acid suppression medication prior to undergoing the EGD. (R. at 394.) She was restarted on her medication, and on December 3, 2013, Vikara stated that she was much improved, and she denied

abdominal pain, nausea and vomiting. (R. at 394.) She weighed 94 pounds. (R. at 394.) Dr. Dozier reported that Vikara was doing well. (R. at 394.)

On January 16, 2014, Vikara reported no gastrointestinal complaints. (R. at 393.) Dr. Dozier reported that Vikara was thin, but well-developed and doing well. (R. at 393.) She weighed 96 pounds. (R. at 393.) On April 25, 2014, Vikara complained of some abdominal pain, but she denied nausea and vomiting. (R. at 392.) She weighed 96 pounds. (R. at 392.) Dr. Dozier reported that Vikara was thin, but well-developed and doing reasonably well. (R. at 392.) As of January 2015, Vikara weighed 104 pounds, (R. at 406), and she experienced no abdominal pain, fatigue, nausea or vomiting. (R. at 404.)

On March 19, 2015, Dr. Sung-Joon Cho, M.D., examined Vikara at the request of Disability Determination Services. (R. at 441-44.) Vikara weighed 100 pounds. (R. at 442.) Dr. Cho reported that Vikara's weight was appropriate for her height. (R. at 443.) Vikara was comfortable; she walked without any assistive devices; she sustained a normal grip in both hands; she had a normal station and gait; she had normal motor function in the upper and lower extremities; she had full range of motion in all joints; deep tendon reflexes were normal; and her orientation, affect, thought content, memory and general fund of knowledge were all unremarkable. (R. at 443.) Dr. Cho diagnosed possible chronic fatigue syndrome or possible nutritional deficiencies. (R. at 444.) Dr. Cho opined that Vikara could occasionally lift and carry items weighing up to 30 pounds and frequently lift and carry items weighing up to 10 pounds; and frequently climb, balance, stoop, kneel, crouch and crawl. (R. at 444.) He found no manipulative or environmental limitations. (R. at 444.)

On April 3, 2015, Dr. R. S. Kadian, M.D., a state agency physician,

completed a medical assessment, indicating that Vikara had the residual functional capacity to perform light[4] work. (R. at 92-99.) No postural, manipulative, visual, communicative or environmental limitations were noted. (R. at 94-96.)

On April 7, 2015, David Deaver, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Vikara had a nonsevere anxiety-related disorder. (R. at 100-12.) He found that Vikara had mild restrictions on her activities of daily living; no difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and had experienced no repeated episodes of extended-duration decompensation. (R. at 110.)

On August 4, 2015, Elizabeth A. Jones, M.A., a licensed senior psychological examiner, evaluated Vikara at the request of Disability Determination Services. (R. at 447-51.) Vikara denied memory problems and had no difficulty with recall; she made excellent eye contact; she had no difficulty with attention or concentration; and there was no evidence of any disordered thought processes. (R. at 449.) Jones diagnosed generalized anxiety disorder. (R. at 450.) Jones opined that Vikara had no limitations in her ability to understand and remember both simple and detailed instructions and to adapt; she had mild limitations in her ability to sustain concentration and persistence due to anxiety; and she may have difficulty sustaining a routine, working in proximity to others and interacting with the general public and co-workers. (R. at 450.)

On August 6, 2015, Howard S. Leizer, Ph.D., a state agency psychologist,

---

[4] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2018).

completed a PRTF, indicating that Vikara had a nonsevere anxiety-related disorder. (R. at 115-27.) He found that Vikara had no restrictions on her activities of daily living, no difficulties in maintaining social functioning or in maintaining concentration, persistence or pace and had experienced no repeated episodes of extended-duration decompensation. (R. at 125.)

On August 11, 2015, Dr. Luc Vinh, M.D., a state agency physician, completed a medical assessment, indicating that Vikara had the residual functional capacity to perform light work. (R. at 129-37.) No postural, manipulative, visual, communicative or environmental limitations were noted. (R. at 131-33.)

The record shows that Vikara treated with Dawn M. Short, F.N.P., a family nurse practitioner with Wellmont Medical Associates, from September 15, 2015, through October 6, 2016, for bronchitis, COPD and anxiety. (R. at 471-97, 604-12.) During this time, Short reported that Vikara was well-developed and well-nourished, and she had a normal mood and affect. (R. at 472-73, 476-77, 481, 486, 491, 495, 606.) Her weight ranged between 80 and 101 pounds. (R. at 472, 476, 480, 485, 490, 495, 605, 610.) In July 2016, Vikara reported anxiety, which was exacerbated by the passing of her father. (R. at 493, 496.) She stated that medications prescribed in the past provided significant relief. (R. at 493.) Short reported that Vikara's mood and affect were normal. (R. at 495.) Short referred Vikara to a psychiatrist[5] and prescribed medication. (R. at 496.)

On August 4, 2016, Vikara reported abdominal pain, poor appetite and weight loss. (R. at 460-61.) She reported that she had not been taking her acid suppression medication. (R. at 461.) She weighed 82 pounds. (R. at 462.) On

---

[5] The record does not contain evidence that Vikara followed up with a psychiatrist.

August 9, 2016, Dr. Dozier performed an esophagojejunoscopy[6] and a Campylobacter-like organism test, ("CLO"),[7] which revealed acute esophagitis, acute gastritis and an acute gastric ulcer. (R. at 456.) On September 1, 2016, Vikara complained of mild epigastric pain; however, she stated that her symptoms were "much improved" on medication. (R. at 727.) She weighed 86 pounds. (R. at 727.) A CT scan of Vikara's abdomen and pelvis showed small gallstones. (R. at 727.) Dr. Dozier opined that Vikara's gallstones were asymptomatic. (R. at 727.)

On September 19, 2016, after going to jail for failing a field sobriety test following a motor vehicle accident, (R. at 540), Vikara went to Lonesome Pine Hospital and was diagnosed with a collapsed lung and rib and left ankle fractures. (R. at 499-528.) She was transferred to Holston Valley Medical Center where she underwent open reduction and internal fixation of the left medial malleolus fracture and dislocation of the left ankle. (R. at 543-45.) At the time of discharge, on September 26, 2016, Vikara was tolerating her diet, and her pain was controlled. (R. at 532.)

On October 6, 2016, Vikara requested that Short complete her disability forms. (R. at 609-12.) She reported that she was doing much better since her last visit. (R. at 609.) She weighed 83 pounds. (R. at 610.) That same day, Short completed a medical assessment, indicating that Vikara could lift and carry items weighing up to 10 pounds; stand and/or walk for up to 30 minutes at a time and for

---

[6] An esophagojejunoscopy is the surgical formation of an artificial communication between the esophagus and the jejunum. *See* https://www.merriam-webster.com/medical/esophagojejunostomy (last visited Sept. 10, 2019).

[7] A CLO test determines the presence of urea-splitting organisms in the upper gastrointestinal tract. The test is one of several used to diagnose whether or not ulcers or gastritis are caused by Helicobacter pylori. *See* https://www.medical-dictionary.thefreedictionary.com/CLO+test (last visited Sept. 10, 2019).

a total of two hours in an eight-hour workday; occasionally climb and balance; frequently stoop, kneel, crouch and crawl; she was limited in her ability to handle and to push and pull items greater than 10 pounds; and she was restricted from working around moving machinery, temperature extremes, chemicals, dust, fumes, and humidity. (R. at 614-16.) Short opined that Vikara would be absent from work more than two days a month. (R. at 616.)

On October 6 and 20, 2016, Vikara reported to Dr. Daniel E. Krenk, D.O., who was treating her ankle injury, that she was experiencing abdominal pain, but her appetite was normal, and she was not vomiting. (R. at 619, 622.) She denied fatigue and reported no significant weight loss. (R. at 619-20, 622-23.) On October 17, 2016, Vikara described her abdominal pain as "mild," and she reported overall improvement. (R. at 729.) On November 10 and 17, 2016, Vikara reported that she could not eat and that she was losing weight. (R. at 730, 732.) An endoscopy revealed gastric outlet obstruction with retention. (R. at 647, 673-74.) She weighed 69 pounds, and Dr. Dozier found that Vikara was severely malnourished and needed to be hospitalized for total parenteral nutrition with probable reconstruction of the gastrojejunostomy. (R. at 647, 732.)

Vikara was admitted to Norton Community Hospital from November 18, 2016, through December 12, 2016, for nausea, vomiting, food intolerance, weight loss and pain. (R. at 630-70, 688-703.) Vikara reported that she had not been compliant with her treatment for the previous eight months. (R. at 630.) She reported depression and anxiety resulting in the recent passing of her father. (R. at 633.) Vikara had a cholecystectomy, she developed pneumonia, and a nasogastric tube was placed during this time. (R. at 630, 653, 660, 668.) As of December 15, 2016, Vikara weighed 82 pounds. (R. at 753.) On December 19, 2016, Vikara reported that she was tolerating small amounts of oral feeding and experienced

only mild abdominal pain, occasional nausea and no vomiting. (R. at 733.) Vikara weighed 77 pounds. (R. at 733.) Dr. Dozier advised her to increase her oral intake and to continue her jejunostomy tube feedings. (R. at 733.)

On January 3, 2017, Vikara weighed 83 pounds. (R. at 735.) On January 12, 2017, Vikara complained of pain in the area of the feeding tube, which was determined to be infected. (R. at 737.) Vikara reported that she was no longer using the feeding tube, as she was eating everything orally. (R. at 737.) Dr. Dozier removed the feeding tube and noted that Vikara was doing well. (R. at 737.) On January 26, 2017, Vikara complained of only mild epigastric pain, and she weighed 92 pounds. (R. at 38.) Dr. Dozier reported that Vikara was doing reasonably well. (R. at 38.)

On January 31, 2017, Dr. Krenk saw Vikara for a follow up to her ankle injury. (R. at 743-45.) Vikara weighed 91 pounds. (R. at 743.) Dr. Krenk reported that Vikara's ankle had excellent range of motion with no edema, she ambulated without aid, and she had no significant gait disturbance. (R. at 745.) On February 16, 2017, Vikara complained of weight loss. (R. at 39.) She reported that she was eating, but felt bloated. (R. at 39.) Dr. Dozier reported that Vikara was doing reasonably well and encouraged her to increase her oral intake. (R. at 39.) By April 3, 2017, Vikara weighed 102 pounds, (R. at 41), and by May 4, 2017, she increased her weight to 104 pounds. (R. at 42.) At that time, she had no complaints and was doing well. (R. at 42.)

### III. Analysis

The Commissioner uses an eight-step process in evaluating whether a claimant's DIB benefits should be terminated. *See* 20 C.F.R. § 404.1594(f) (2018).

This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has an impairment that meets or equals the requirements of a listed impairment; 3) has seen medical improvement in her previously disabling condition; 4) has seen an increase in her residual functional capacity; 5) an exception to the medical improvement applies; 6) has a severe impairment; 7) can return to her past relevant work; and 8) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1594(f)(1)-(8). If the Commissioner finds conclusively that a claimant is disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1594(f).

Vikara argues that the ALJ erred by failing to properly apply the "medical improvement" standard prior to finding that her medical condition had improved. (Plaintiff's Memorandum In Support Of Her Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-7.)

As a preliminary matter, I note that the previous finding of Vikara's disability does not impose a presumption of continuing disability. *See* 42 U.S.C.A. § 423(f) (West 2011 & Supp. 2019); *Crawford v. Sullivan*, 935 F.2d 655, 656-57 (4th Cir. 1991); *Rhoten v. Bowen*, 854 F.2d 667, 669 (4th Cir. 1988). The fact that a person was once "disabled" does not give rise to a presumption that she remains disabled. *See* 42 U.S.C. § 423(f). The Commissioner, however, bears the burden of showing that a medical improvement has occurred and that the improvement relates to the claimant's ability to work. *See Lively v. Bowen*, 858 F.2d 177, 181 n.2 (4th Cir. 1988); *see also Edwards v. Astrue*, 2012 WL 6082898, at *3 (W.D. Va. Dec. 6, 2012). The Commissioner must demonstrate that the termination of benefits was based on a consideration of all the evidence in the record and a finding that the claimant was able to engage in substantial gainful activity. *See* 42 U.S.C. § 423(f); *Crawford*, 935 F.2d at 656-57. A person's disability "ends" when

she is again "able to engage in substantial gainful activity." 42 U.S.C. § 423(f)(1)(B). If the claimant produces evidence that she cannot return to her past relevant work, "the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering" her age, education, work experience and limitations. *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012).

In order to terminate Vikara's benefits, the ALJ must have found that, subsequent to the comparison point date, "medical improvement" in Vikara's condition occurred, and this improvement was related to her ability to work. *See* 20 C.F.R. § 404.1594(f)(3)–(4). "Medical improvement is any decrease in the medical severity [of an] impairment(s) [that] was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1) (2018). An ALJ determines medical improvement by comparing "prior and current medical evidence" which must show "changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." 20 C.F.R. § 404.1594(c)(1) (2018); *see also Latchum v. Astrue*, 2008 WL 3978081, at *2-3 (W.D. Va. Aug. 26, 2008) (holding that the Commissioner need only produce "sufficient medical evidence" of improvement and that the ALJ need not base his decision on the same type of medical evidence that the person used to establish the previous disability).

A medical improvement is "related" to the person's ability to work "if there has been a decrease in the severity" of an impairment "*and* an increase in [the person's] functional capacity to do basic work activities." 20 C.F.R. § 404.1594(b)(3) (2018). The Commissioner bears the burden of "show[ing] that a medical improvement has occurred, and that the improvement relates to the claimant's ability to work." *Edwards*, 2012 WL 6082898, at *3 (citing *Lively*, 858

F.2d at 181 n.2). If medical improvement related to a claimant's ability to work occurred, then the ALJ will determine the claimant's residual functional capacity and determine whether the residual functional capacity permits the claimant to perform work done in the past or other work available in significant numbers in the national economy; if so, then the ALJ will find that the claimant's disability has ended. *See* 20 C.F.R. § 404.1594(f)(7),(8).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

The ALJ further found that, as of April 9, 2015, Vikara had the residual functional capacity to perform sedentary work, except that she could lift and carry items weighing up to 10 pounds; that she could stand and/or walk for two hours and sit with no limitation; that she could perform work that required no more than occasional climbing and balancing; that required no more than frequent stooping, kneeling, crouching and crawling; that did not require her to handle heavy objects or require pushing and pulling more than 10 pounds; and that did not require exposure to moving machinery, temperature extremes, dusts, chemicals, fumes and humidity. (R. at 21.) Based on my review of the record, I find that substantial evidence supports the ALJ's finding that Vikara's disability ceased as of April 9, 2015, due to medical improvement related to her ability to do work. I also find that

substantial evidence exists to support the ALJ's finding with regard to Vikara's residual functional capacity.

The ALJ noted that, starting April 9, 2015, Vikara no longer met the listing for weight loss due to any digestive disorder, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 5.08. (R. at 18-19.) Based on my review of the record, I find that substantial evidence exists to support the ALJ's finding that Vikara's weight loss did not meet or equal § 5.08. Section 5.08 requires weight loss due to any digestive disorder despite continuing treatment as prescribed, with a BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive six-month period. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 5.08 (2018). The ALJ noted that the evidence showed that Vikara continued to experience fluctuations in her weight and that she continued to complain of fatigue, but that her weight no longer met a listing, and it had not remained consistently low. (R. at 19.)

In 2013 and 2014, Dr. Dozier treated Vikara for her gastritis. (R. at 392-94.) She consistently reported that her medications improved her condition, to the extent that she no longer experienced nausea and vomiting, and Dr. Dozier's gastrointestinal examinations consistently were unremarkable. (R. at 392-94.) The record shows that Vikara's weight ranged between 77 and 86 pounds from July 2016 through December 2016. (R. at 462, 495, 605, 610, 625, 727, 733, 753.) During this time, Vikara's BMI ranged less than the required 17.50 on six different occasions. (R. 462, 605, 610, 625, 733, 753.) In August 2016, Vikara reported increased gastric symptoms, but admitted that she had not been taking her acid suppression medication. (R. at 460-61.) In November 2016, Vikara reported that she had not been compliant with her treatment for the previous eight months. (R. at 630.) At that time, Vikara was hospitalized for malnutrition, and she underwent reconstruction of the gastrojejunostomy. (R. at 630, 647, 732-33.) Following

surgery, her weight steadily increased. (R. at 38, 733, 735, 753.) As of January 31, 2017, Vikara's weight had increased to 91 pounds. (R. at 743.) The record shows that, in April 2017, Vikara weighed 102 pounds, and in May 2017, she weighed 104 pounds. (R. at 41-42.) Dr. Cho reported that Vikara's weight of 100 pounds was appropriate for her height. (R. at 442-43.)

As noted above, in order to meet or equal the requirements of § 5.08, the claimant must have weight loss due to a digestive disorder *despite* continuing treatment as prescribed, with a BMI of less that 17.50. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 5.08. However, as noted above, in August and November 2016, Vikara reported that she had not been compliant with treatment. (R. at 461, 630.) The record shows that Vikara's condition improved, and she gained weight when she was compliant with treatment. (R. at 38, 41-42, 392-93, 404, 727, 729, 737, 743.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986). Based on this, I find that substantial evidence exists to support the ALJ's finding that Vikara did not meet or equal the requirements of § 5.08.

I also find that substantial evidence exists to support the ALJ's finding with regard to Vikara's residual functional capacity. Dr. Cho's examination showed that Vikara walked without any assistive devices; she sustained a normal grip in both hands; she had a normal station and gait; she had normal motor function in the upper and lower extremities; she had full range of motion in all joints; deep tendon reflexes were normal; and her orientation, affect, thought content, memory and general fund of knowledge all were unremarkable. (R. at 443.) Dr. Cho diagnosed possible chronic fatigue syndrome or possible nutritional deficiencies. (R. at 444.) Dr. Cho opined that Vikara could occasionally lift and carry items weighing up to 30 pounds and frequently lift and carry items weighing up to 10 pounds; and

frequently climb, balance, stoop, kneel, crouch and crawl. (R. at 444.) He found no manipulative or environmental limitations. (R. at 444.) The ALJ gave "some weight" to Dr. Cho's assessment, but in light of the medical record and Vikara's subjective allegations, he restricted her to sedentary work. (R. at 26.) In September 2016, Vikara underwent an open reduction and internal fixation of a left medial malleolus fracture and dislocation of the left ankle. (R. at 543-45.) In January 2017, Dr. Krenk found that Vikara's ankle had excellent range of motion with no edema, and she ambulated without aid and had no significant gait disturbance. (R. at 745.) In May 2017, Vikara reported no complaints, and Dr. Dozier concluded that she was doing well. (R. at 42.) In addition, the ALJ noted that both state agency physicians found that Vikara could perform light work. However, the ALJ gave Vikara the benefit of the doubt and restricted her to sedentary work. (R. at 26, 92-99,129-37.)

The ALJ gave "great weight" to the functional limitations opined by Short because they were consistent with the objective findings of record, as well as Vikara's subjective complaints. (R. at 27.) However, the ALJ gave little weight to Short's opinion that Vikara would be absent from work more than two days a month. (R. at 27.) Short routinely reported that Vikara was well-developed and well-nourished, and she had a normal mood and affect. (R. at 472-73, 476-77, 481, 486, 491, 495, 606.) Psychological examiner Jones found that Vikara had no difficulty with recall; she made excellent eye contact; she had no difficulty with attention and concentration; and there was no evidence of any disordered thought processes. (R. at 449.) The ALJ noted that Vikara was fairly active outside of her brief hospitalization. (R. at 27.) Vikara reported that, on a daily basis, she played on her mobile phone; she watched television; she went to the grocery store daily to get what she needed for dinner and then she cleaned the house, loaded the dishwasher and did the laundry. (R. at 449-50.)

Vikara argues that the ALJ "randomly picks and chooses" which parts of Short's opinion to accept and reject. (Plaintiff's Brief at 7.) The ALJ is not required to adopt a residual functional capacity assessment of a treating or examining physician in determining a claimant's residual functional capacity. Instead, the ALJ is solely responsible for determining a claimant's residual functional capacity. *See* 20 C.F.R. § 404.1546(c) (2018); *see also* 20 C.F.R. § 404.1527(d)(2) (2018) (a claimant's residual functional capacity is an issue reserved exclusively to the Commissioner). Furthermore, an ALJ is not bound to adopt a medical opinion in its entirety, even when he gives it significant weight. *See* 20 C.F.R. § 404.1527(d); *see also Carter v. Berryhill*, 2017 WL 6391485, at *4 (W.D. Va. Dec. 14, 2017) (holding that substantial evidence supported the ALJ's decision to accord little weight to the portions of the doctor's opinion that the record did not support, but giving greater weight to the portions that the record supported); *Hilliard v. Colvin*, 2016 WL 5415821, at *11 (W.D. Va. Sept. 27, 2016) (citing *Mays v. Barnhart*, 2003 WL 22430186, at *4 (3d Cir. 2003)); *Titterington v. Barnhart*, 2006 WL 584277, at *4 (3d Cir. 2006) ("There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining a [residual functional capacity]")). The relevant question is whether the ALJ's residual functional capacity assessment is based upon all the relevant evidence, including medical records, medical source opinions and the claimant's subjective allegations and description of her own limitations. *See* 20 C.F.R. § 404.1546(c).

Based on the above, I find that substantial evidence exists to support the ALJ's finding that Vikara did not meet or equal the requirements of § 5.08. I also find that substantial evidence exists to support the ALJ's weighing of the medical

evidence and his finding with regard to Vikara's residual functional capacity. An appropriate Order and Judgment will be entered.

DATED: September 10, 2019.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE